IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


| | | |
|---|---|---|
| JOSEPH WENDELL HUME, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:11-CV-0024 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |


**REPORT AND RECOMMENDATION TO
DENY PETITION FOR WRIT OF HABEAS CORPUS**

Came for consideration the Petition for a Writ of Habeas Corpus filed by petitioner JOSEPH

WENDELL HUME.  By his habeas application, petitioner challenges his May 22, 2008 convictions

for five (5) counts of aggravated robbery and three (3) counts of aggravated sexual assault out of the

181st Judicial District Court of Randall County, Texas, and the resultant consecutive life sentences

assessed for each conviction.  *See State v. Hume*, Nos. 19,597-B, 19,600-B, 19,601-B, 19,611-B,

and 19,619-B.  The undersigned United States Magistrate Judge recommends petitioner's habeas

application be DENIED.


I.
FACTUAL AND PROCEDURAL HISTORY

On January 6, 2008, Lenora Braddock was shopping at Kohl's in Amarillo, Texas,
with her two daughters.  As the three women returned to and entered their vehicle, [a
man] entered into the back seat of the vehicle. [The man] pulled a gun and robbed
the three women.  Later on that same day, [a man] approached another woman in a

Walmart parking lot and displayed a gun. [The man] had the woman drive him out of the parking lot to a secluded area where he proceeded to rob and rape her.  During the second assault, [the man] asked the victim to put on lipstick, place a cigarette in her mouth to wet it, and to then give him the cigarette.  Because of [the man's] unusual request for a wet cigarette with lipstick, the police took a second look at a 2006 case in which two women were robbed at the Westgate mall parking lot.  In that Westgate mall case, the robber also asked the women to provide him a wet cigarette with lipstick. [The man – petitioner] was charged with six indictments, two of which contained multiple counts.

*Hume v. State*, No. 07-08-0233-CR, 2009 WL 4062007 (Tex. App.–Amarillo Nov. 24, 2009, no pet.).

On February 6, 2008, in the 181st Judicial District Court of Randall County, Texas, petitioner was charged in five indictments[1] with five counts of aggravated robbery with a deadly weapon in violation of section 29.03 of the Texas Penal Code and three counts of aggravated sexual assault in violation of section 22.021 of the Texas Penal Code.  Specifically, petitioner was indicted for the following offenses:

•       Cause number 19,597 petitioner was charged with one count of aggravated sexual assault committed on or about January 6, 2008 in violation of section 22.021 of the Texas Penal Code.

•       Cause number 19,600 petitioner was charged with two separate counts of aggravated sexual assault committed on or about January 6, 2008 in violation of section 22.021 of the Texas Penal Code.

•       Cause number 19,601 petitioner was charged with one count of aggravated robbery in violation of section 29.03 of the Texas Penal Code committed on or about January 6, 2008.

---

[1]The sixth count was never tried and the indictment has not been found in the state court records.

- Cause number 19,611 petitioner was charged with aggravated robbery committed on or about July 28, 2006 in violation of section 29.03 of the Texas Penal Code.

- Cause number 19619 petitioner was charged with three counts of aggravated robbery committed on or about January 6, 2008 in violation of section 29.03 of the Texas Penal Code.

On May 22, 2008, petitioner entered an open plea of guilty to the two counts of aggravated sexual assault in cause number 19,600, and, after hearing punishment evidence, Hume was sentenced to two terms of life imprisonment. During a break in the proceedings petitioner and the State came to an agreement whereby petitioner agreed to plead guilty to four of the remaining indictments (cause numbers 19,597, 19,601, 19,611, and 19,619) with a recommendation from the state of life imprisonment on each case but with the judge to decide whether the sentences would run consecutively or concurrently. The state agreed to dismiss the indictment in cause number 19,602. Petitioner was sentenced on the remaining charges to six additional terms of life imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division.[2]

On June 20, 2008, petitioner filed a motion for new trial. Petitioner contended the verdict was contrary to the law and the evidence because of petitioner's mental state at the time of the crime and his need for psychiatric evaluation. On July 31, 2008, the state trial court conducted a hearing on petitioner's motion. At the hearing, it was determined that petitioner did not have sufficient grounds for the judge to order a new trial, and on August 5, 2008 the state trial court

---

[2]From examining the judgments it appears the two life sentences assessed in cause number 19,600 run concurrently. The punishment in cause number 19,597 is set to run consecutively to the sentences in 19,600. Punishment in 19,601 is set to run consecutively to the sentence in 19,600. Punishment in 19,611 is set to run consecutively to the sentence in 19,601. The three sentences in cause number 19,619 are set to run concurrently to each other but consecutively to the sentence in 19,611. From examining the Texas Department of Criminal Justice records and the commitment sheets in the state court records, however, it appears the sentences are possibly running concurrently. If there was an error in calculating the sentence or in assessing it concurrently rather than consecutively, this issue has not been raised in this habeas corpus action and the court does not address it.

denied petitioner's motion for new trial.

Petitioner timely appealed his convictions and sentences to the state appellate court.  *Hume v. State*, Nos. 07-08-0233-CR; 07-08-0234-CR; 07-08-0235-CR; 07-08-0236-CR; and 07-08-0237-CR.  On November 24, 2009, the state intermediate appellate court affirmed petitioner's convictions.  Petitioner did not timely seek a petition for discretionary review.[3]

On August 24, 2010, petitioner filed state applications for writs of habeas corpus challenging his convictions and sentences, alleging the state violated his right to equal protection under the law, violated the Double Jeopardy Clause, charged him in improperly presented indictments, convicted him after an involuntary plea, failed to provide effective assistance of counsel, committed  prosecutorial misconduct, and utilized a coerced confession in violation of *Miranda*, which confession was also the product of an unlawful search and seizure.  *Ex parte Hume*, Application Nos. WR-74,738-01; -02; -03; -04; -05 ["SHCR"].  On October 6, 2010, the Texas Court of Criminal Appeals dismissed those applications as non-compliant with Rule 73.1 of the Texas Rules of Appellate Procedure.  On October 28, 2010, petitioner again filed state applications for writs of habeas corpus alleging the same claims as in his previous application.  SHCR Nos. 74,738-06; -07; -08; -9; -10.  During the state habeas proceedings, the State submitted an affidavit from petitioner's appointed trial counsel addressing petitioner's allegations of ineffective assistance of counsel.  On January 5, 2011, the Texas Court of Criminal Appeals denied petitioner's state habeas applications without written order.

---

[3]On January 15, 2010, petitioner was granted an extension of time to file a petition for discretionary review, however, petitioner did not file a petition until June 14, 2010, after the time limit on the extension had passed.  *Hume v. State*, PDR Nos. 050-10 thru 054-10.

Petitioner filed this federal habeas application on January 28, 2011.[4]  On April 27, 2011, respondent filed an answer arguing the habeas petition should be denied.  On May 13, 2011, petitioner filed a reply to respondent's answer.

II.
PETITIONER'S ALLEGATIONS

Petitioner contends he is confined in violation of the Constitution and laws of the United States for the following reasons:

1.   The indictments alleging aggravated robbery were defective because the indictments did not identify the property stolen during the robbery;

2.   Petitioner's convictions for aggravated sexual assault violate the prohibition against double jeopardy because he was convicted and punished multiple times for the same offense;

3.   The State wrongfully withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to identify the property stolen during the robbery;

4.   Petitioner's guilty plea was involuntary because he was misinformed by counsel that he was not eligible for probation;

5.   Petitioner was denied effective assistance of counsel at trial because counsel:

   A.   Did not discover, challenge or properly advise petitioner of the deficiencies in the indictments;

   B.   Testified against petitioner at a hearing on his motion for new trial in violation of counsel's ethical obligations to petitioner; and

   C.   Failed to advise petitioner of the possibility of receiving a probated sentence from a jury.

6.   The State committed prosecutorial misconduct when it:

---

[4]Petitioner sent a letter with his application dated January 21, 2011.  *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998).

     A.      Indicted petitioner with defective indictments; and

     B.      Perjured itself at the hearing on petitioner's motion for new trial; and

7.      Petitioner's confession was involuntary because it was coerced, obtained in violation of *Miranda*, and was the result of an unlawful search and seizure.

III.

MERITS

Respondent's answer fully and accurately sets out the appropriate standard under the AEDPA for reviewing a state court adjudication on the merits, and the appropriate burden of proof petitioner must meet. *Answer*, at 5-8. These standards are applicable to this case. To prevail federally, petitioner must show the state court adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

1. Defective Indictment

By his first ground, petitioner contends the indictments alleging aggravated robbery were defective because they did not identify the property stolen during the course of the robbery.[5]

Under the Constitution, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Bailey*, 444 U.S. 394, 414, 100 S. Ct. 624, 636-37, 62 L. Ed. 2d 575

---

[5]Petitioner also complains in his first ground that the aggravated sexual assault charges in cause numbers 19,597 and 19,600 violate the double jeopardy clause. This claim is cumulative of petitioner's second claim and is addressed in part 2 of this report and recommendation.

(1980) (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. Ed. 2d 590

(1974)); *see Russell v. United States*, 369 U.S. 749, 763–64, 82 S. Ct. 1038, 1047, 8 L. Ed. 2d 240

(1962); *United States v. Devoll*, 39 F.3d 575, 578 (5th Cir. 1994).   A plain reading of the challenged

indictments demonstrates they informed petitioner of the elements of the charge against him and

provided sufficient detail to enable him to rely upon the indictment as a double jeopardy bar in the

event of a subsequent prosecution.   Petitioner's indictments satisfy the requirements of the

Constitution. *See United States v. Hernandez*, 891 F.2d 521, 525 (5th Cir. 1989)

In addition, the sufficiency of a state charging instrument is not a matter for federal habeas

corpus relief unless the indictment is so defective that the convicting court had no jurisdiction.

*Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994).   The indictment must be flawed to the extent

that under no circumstances could a valid conviction result from the facts provable under the

indictment.   *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988).   The sufficiency of an

indictment is determined by looking to the law of the state where the indictment issued.   *Id*.   Thus,

questions about whether an allegedly defective indictment confers jurisdiction on a state trial court

are matters of state law.   *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994).   It is not the role of a

federal habeas court to review the state courts' interpretation of the state's own rules.   *See, e.g.*,

*Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011).

Petitioner references Article 21.09 of the Texas Code of Criminal Procedure in support of

his contention that the indictments were defective.   Article 21.09 states: "If known, personal

property alleged in an indictment shall be identified by name, kind, number, and ownership. When

such is unknown, that fact shall be stated, and a general classification, describing and identifying

the property as near as may be, shall suffice."   Petitioner Hume, however, was not indicted for theft,

but was indicted for aggravated robbery and his reliance on Article 21.09 is misplaced.  While it is

true that no personal property was specifically alleged in the indictment, none needed to be alleged.

Under Article 21.03 of the Texas Code of Criminal Procedure it is only necessary to state in an

indictment "everything which is to be proved."  Theft or attempted theft is a necessary element of

robbery, and although one of the required elements of a proper indictment for a theft offense is an

allegation of the specific items stolen, an indictment for robbery need not allege the specific items

of the particular theft.  TEX. PENAL CODE ANN. §§ 29.02-3 (West 1994); *Davis v. State*, 532 S.W.2d

626, 627 (Tex. Crim. App. 1976)  Instead, a robbery indictment need only allege that a theft

occurred or was attempted.  TEX. PENAL CODE ANN. §§ 29.02-3 (West 1994); *Davis*, 532 S.W.2d at

627.  Because a proper indictment for robbery only requires an allegation that a theft occurred or

was attempted, and does not require alleging the specific items stolen, there is no requirement that

an indictment for robbery include any description of the property which was stolen.  *Davis*, 532

S.W.2d at 627. Since no description of stolen property was necessary, the indictment does not fail

for a lack of a description.  *Id.*  Petitioner's first ground is without merit and should be denied.


## 2.  Double Jeopardy

By his second ground, petitioner argues his convictions for aggravated sexual assault in

cause numbers 19,597 and 19,600 violate the prohibition against double jeopardy.  The state relies

on *United States v. Broce*, 488 U.S. 563, 574-75, 109 S. Ct. 757, 765, 102 L. Ed. 2d 927  (1989)  for

the proposition that a guilty plea waives any potential double jeopardy violation.  Resp. Brief 11.

The effect of a guilty plea on a double jeopardy claim, however, is not an absolute waiver of the

claim.  *Id.*  Rather, a guilty plea waives the petitioner's right to an evidentiary hearing on the matter

of a possible, non-facially apparent double jeopardy violation.  *Taylor v. Whitley*, 933 F.2d 325,

328-29 (5th Cir. 1991).  Any double jeopardy claims that are apparent from the face of the charging instrument survive a guilty plea and may be raised in a collateral proceeding.  *Broce*, 488 U.S. at 574, 109 S. Ct. at 764-65.  Consequently, it must be determined from the indictments if a double jeopardy violation is facially apparent.

The Double Jeopardy Clause protects an accused against multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187 (1977).  When applied to cumulative sentences imposed in a single trial, the Double Jeopardy Clause prevents a sentencing court from prescribing a greater punishment than the legislature intended.  *Missouri v. Hunter*, 459 U.S. 359, 365, 103 S. Ct. 673, 677, 74 L. Ed. 2d 535 (1983).  When determining the amount of punishment the legislature intended to impose for a particular crime, federal courts are bound by the construction of the statute given by that state's highest court.  *Id.* at 368.  Thus, where a state's highest court has held that a state's legislature intended punishment proscribed in separate statutes (or separate parts of the same statute) to be punishable cumulatively, cumulative punishment may be assessed even if the statutes would be deemed to proscribe the same conduct under the *Blockburger* test[6].  *Id.*  With regards to aggravated sexual assault, Texas courts have held each different act described in the sexual assault statute constitutes a separate offense, even if the acts proscribed are committed in the same criminal occurrence, and may thus be punished separately without violating the Double Jeopardy Clause.  *Gonzales v. State*, 304 S.W.3d 838, 847-49 (Tex. Crim. App. 2010); *see Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999).

Petitioner argues indictment number 19597-B and indictment number 19600-B allege the

---

[6]If the *Blockburger* test *were* applied to this statute, it would pass constitutional muster.  Under *Blockburger*, the Double Jeopardy Clause is not violated if each offense the defendant is charged with requires proof of a different element. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).  Here, each section of the statute requires proof of and punishes a different act than do the other sections.

same offense.  Petitioner is incorrect.  While both indictments allege aggravated sexual assault

against the same victim, indictment number 19597-B alleges aggravated sexual assault by

penetration of the victim's mouth by the petitioner's sexual organ, an act proscribed by subpart (ii)

of section 22.021 of the Texas Penal Code.  Conversely, indictment number 19600-B alleges, in

count I, penetration of the victim's sexual organ by the petitioner's sexual organ and, in count II,

penetration of the victim's sexual organ by the petitioner's mouth, both of which are acts proscribed

by subparts (i) and (iii) respectively.  TEX. PENAL CODE ANN. § 22.021 (a)(1)(A)(i)-(iii) (West

2007).  Because the Texas Aggravated Sexual Assault Statute has been interpreted by the Texas

Court of Criminal Appeals to indicate legislative intent that each act be punishable separately, the

Double Jeopardy Clause of the U.S. Constitution is not offended by the punishment petitioner was

given for each offense, two concurrent life sentences in cause number 19,600 and a consecutive life

sentence in 19,597.  *Id.*; *Gonzalez*, 304 S.W.3d at 849.  This claim is without merit and should be

denied.

### 3. *Brady* Violation

By his third ground, petitioner maintains the State wrongfully withheld exculpatory

evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

To prevail on a *Brady* claim, a petitioner must show (1) the prosecution suppressed

evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material.  *Drew v.*

*Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  Evidence is *material* only if there is a *reasonable*

*probability* that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different.  *United States v. Bagley*, 473 U.S. 667, 684, 105 S. Ct. 3375, 3385, 87 L. Ed.

2d 481 (1985) (emphasis added).  A "reasonable probability" is a probability sufficient to

undermine confidence in the outcome of the trial.  *Id*. at 678, 684.

Although denominated as a *Brady* claim, petitioner's claim is not a true *Brady* claim.

Instead, it is more of a reurging of his defective indictment claim under ground one.  Petitioner has

not identified any *exculpatory* evidence that was withheld, nor has he made any claims showing

how any withheld evidence would have been favorable to his defense, much less shown the

evidence would have been material.  Bare accusations that the prosecution failed to turn over some

piece of evidence does not entitle a petitioner to prevail on a habeas claim under *Brady*.  *See Drew*,

964 F.2d at 419.  The prosecution is not obligated to turn over its entire case file, and the "mere

possibility" that undisclosed evidence might have helped the defense "does not establish

'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S. Ct.

2392, 2400, 49 L. Ed. 2d 342 (1976).  Thus, petitioners claim that the state's failure to identify the

property stolen during the aggravated robbery denied petitioner  notice of the allegations against

him fails because it does not show how such disclosure would have made a material impact on the

outcome of the case.  Petitioner's third ground should be denied.

### 4.  Voluntariness of Guilty Plea

Petitioner contends his guilty plea was involuntary because he had been informed by counsel

that he was not eligible for probation when he was, in fact, eligible for a probated sentence.

Respondent has summarized the events leading to petitioner's guilty plea in his answer:

> [Petitioner] was charged with, inter alia, three separate charges of aggravated sexual
> assault with a deadly weapon and five charges of aggravated robbery with a deadly
> weapon. [Petitioner] was faced with possible life sentences on each of those charges.
> Despite the violent and serial nature of his crimes, [petitioner] believed he should be
> offered probation.  Prior to trial, and despite the fact that [petitioner's] trial counsel
> advised against it, a meeting was held between [petitioner], his trial counsel and
> representatives from the District Attorneys office.  The purpose of the meeting was to
> discuss the State's plea offer and [petitioner's] desire for probation.  Despite the

State's insistence that it would only offer concurrent life sentences on each cause, [petitioner] was insistent that he should receive probation.  This, despite the fact that he would face a significantly shorter period of time before becoming parole eligible had he accepted the offer than if he received consecutive life sentences after a not guilty or open plea.  At the conclusion of the meeting, [petitioner] stated that he would make an open plea to the trial counsel. [Petitioner's] trial counsel advised him against making an open plea.  Facing a possible life sentence in each cause, with the possibility of the sentences being stacked, [petitioner] rejected trial counsel's advice that he accept the State's plea offer of concurrent life sentences in each cause (with some charges being dismissed).

[Petitioner] ultimately rejected the State's offer and entered an open plea in the first cause that was called on the day of his trials.  Trial counsel filed an application for community supervision during these proceedings.  At the beginning of the proceedings the trial judge admonished [petitioner], stating "[a]nd you understand that range [of punishment] is anywhere from probation all the way up to that range of punishment that we talked about?"  The trial court then heard extensive testimony from the victims and sentenced [petitioner] to life imprisonment on both counts in cause number 19,600-B.  The trial court, after recess, called the remaining causes and noted that a plea agreement had been agreed to whereby the parties agreed to life sentences in the remaining causes, agreed to cause number . . . 19,602-B being dismissed, but had not agreed whether the sentences would run concurrently or consecutively.  The trial court sentenced Hume to life imprisonment on each count.

*Answer* at 15-16 (citations omitted).

Petitioner claims his guilty plea was involuntary because trial counsel told him he was not eligible for probation.  The record includes conversations and testimony regarding trial counsel's advice as to the possibility petitioner would receive probation.  First, there is a letter trial counsel wrote to petitioner wherein petitioner alleges trial counsel stated petitioner was not eligible for probation.  While it is true that trial counsel in the letter stated petitioner would not get probation, counsel goes on to state, "I have explained that in some cases it does happen but that I did not feel you [would] be considered for probation." SHCR -09 at 36.  While the statement petitioner refers to, taken out of context, seems to indicate trial counsel told petitioner he would not be eligible for any form of probation or supervised release, within the context of the letter it is apparent trial counsel was merely giving her legal opinion on the *probability* petitioner would receive probation or some

type of supervised release.

Petitioner also calls attention to a transcript of the meeting that took place between the defense and the state.  At the meeting , the parties discussed the state's plea offer and petitioner's insistence that he should be granted probation.  *Id*. at 93-108.  During the meeting, trial counsel stated: "You're not eligible for probation.  What I explained to you was deferred adjudication which means if you had 10 years deferred adjudication . . . but basically what I told you was that there was some very stiff rules.  And those rules involved something as simple as paying money.  If you violated that, then that opens up the full range of punishment which could include 99 years or life in prison.  *Id*. at 97.  Later in the meeting, trial counsel stated, "bottom line is you're not happy with life . . . but I have explained to you, you have no constitutional right to probation and . . . nobody has to give you probation." Id. at 99-100.  Trial counsel was explaining that, while there is a chance of probation, there is no guarantee.  After that exchange petitioner asked the State for "a one shot deal.  Just one more chan[c]e."  *Id*. at 101.  This request that he be given probation contradicts petitioner's claim that he believed he was ineligible for probation and proves petitioner was aware probation was a possibility.

The record also includes the transcript of the hearing on petitioner's motion for a new trial.  3 RR 3-78.  When discussing petitioner's eligibility for probation, trial counsel initially testified she told petitioner he was not eligible for probation.  3 RR 47, 55-56.  Trial counsel later stated, however, that her advice was:

> If we went to successive trials – once we had one trial doesn't mean he's going to get probation on the other trials, or that you would be able to give him probation. *Probation is always a possibility*.  I repeatedly told him that *I did not feel like a jury trial in Randall County would give him probation* on any case that was tried.  I had prepared applications to provide him.  I had a letter from him ask– telling me he wanted to proceed with an open plea.  But all the aspects of that – and I'm sorry I

didn't explain it right, Your Honor, but it was just that once we tried one, even if he had gotten probation on one of them, it doesn't mean if we went to trial on the next one – and my understanding from the district attorney's office was that they would do a jury trial on each one of these offenses. *So it's not that he wouldn't have necessarily been eligible*, but that *I didn't feel that a jury would give him probation*, that if we did one it doesn't mean he would get it on all the others. And so we'd be back in a quandary. If we tried an easy case and then went to the harder case, it could make a whole difference with the number of cases that we had. But I feel like I explored all the possibilities of punishment with him. But that was my concern with an open plea.

3 RR 63-64 (emphasis added). Later, trial counsel stated petitioner "would not get probation from a jury in Randall County" and that she informed petitioner that the likelihood was not great that he would be given probation. 3 RR 65. Trial counsel also testified petitioner was aware there was a possibility he could get probation from a jury, that he chose to go before the judge rather than a jury, and that the judge had the option of putting him on deferred probation. 3 RR 66. Petitioner also testified at the hearing and stated, "I asked her what would be the best solution if possible, and she said the Judge would probably be the best solution, because the jury would stack the charges and all – *probably would not give you probation*." 3 RR 69 (emphasis added).

Even if trial counsel's advice regarding probation could be characterized as confusing, petitioner has not shown he was improperly counseled by his trial attorney to the degree it rendered his guilty plea involuntary. Petitioner was not eligible for judge-ordered community supervision under Texas Code of Criminal Procedure article 42.12 § 3g, but was eligible for judge ordered deferred adjudication community supervision under Texas Code of Criminal Procedure article 42.12 § 5, and was also eligible under Texas Code of Criminal Procedure article 42.12 § 4 for jury-ordered probation. Again, while trial counsel's advice to petitioner was not as clear as it could have been, the state court determination that petitioner's plea was voluntary and that petitioner was not entitled to relief was not unreasonable.

A federal court must uphold a guilty plea challenged in a habeas corpus proceeding if the plea was voluntary, knowing, and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Consequently, a challenge is limited to issues of (1) voluntariness, (2) the defendant's understanding of the charges against him, and (3) the defendant's understanding of the consequences of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985). With respect to sentencing, this means "that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990).

The more important question before this Court is not whether counsel misadvised petitioner, but whether, under the AEDPA, federal relief is available to petitioner. That is, this Court must determine whether the state court determination that petitioner was not eligible for relief was based upon an unreasonable determination of the facts. In determining whether the state court decision was unreasonable, this Court must be careful to not substitute its judgment for that of the state court. In other words, a determination that the state court reached the wrong result or that the state court decision was incorrect, is insufficient. Before federal habeas relief can be granted, a state court decision must involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or the relevant state court decision must have been based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The state court's application of the law must be "objectively unreasonable" not "merely erroneous" or "incorrect." *Cobb v. Thaler*, 682 F.3d 364 (5th Cir. 2012). In *Harrington v. Richter*, __ U.S.___, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), the Supreme Court held that the AEDPA standard is met only in cases where there is no possibility a fair minded jurist could disagree that the state court's decision conflicts with Supreme Court precedent.

HAB54\R&R\HUME-24:1

The decision by the Texas Court of Criminal Appeals to deny petitioner habeas corpus relief was not "objectively unreasonable," and, as a result, petitioner is not entitled to relief. Where applicable, the state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'" *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (quoting 28 U.S.C. § 2254(e)(1)). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). Where pure questions of fact are concerned, a petitioner is not entitled to relief unless he demonstrates the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008). Here, the state court's determination that petitioner was adequately advised of his trial and plea options was not objectively unreasonable based on the evidence presented.

Where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotation omitted). Defense counsel's performance was competent and did not render petitioner's plea involuntary. As discussed above, trial counsel properly advised petitioner of his legal options relating to entering a guilty plea before a judge or jury, or trying the case before the judge or a jury. Indeed, petitioner testified to this very fact, stating at the hearing on the motion for new trial that he was aware of the possibility of probation, but counsel thought it unlikely that a jury would give it to him. The only deficiencies petitioner has brought to this court's attention are either times where trial counsel misspoke or was unclear. At the most, the record is conflicted regarding

what counsel did or did not say, and that is not enough to prove the state court determination was unreasonable.

In any event, petitioner has failed to show prejudice.  Obviously petitioner would now like to withdraw his plea and obtain concurrent sentences or go to trial five separate times.  Petitioner rejected the plea bargain, however, and entered an open plea hoping for probation or for a sentence of less than life.  Even if it were assumed that trial counsel misadvised petitioner, this error was cured by the admonishments of the trial judge.  Before petitioner entered his guilty plea he was informed by the trial judge of the correct range of punishments.  If he did not know the correct punishment range when he decided to enter his open plea, he certainly knew the correct punishment range before he actually entered his plea.  Likewise, the benefit petitioner believes he would have gained from proceeding before a jury was available to petitioner before the judge.  Deferred adjudication would have led to the same result as probation, i.e. petitioner not having to serve a prison sentence.  Counsel's advice that petitioner stood no realistic chance of receiving a probated sentence was valid.  To have received probation from a jury, petitioner would have to have been sentenced to a term of imprisonment of ten years or less and the jury would have to have probated that sentence.  As far as judge ordered probation, the record is clear that the judge did not consider a probated sentence to be appropriate.  When petitioner refused to follow that advice, trial counsel's additional advice that petitioner had a better chance of getting deferred adjudication from the judge than probation from five juries was also reasonable.  Petitioner's fourth ground should be denied.

## 5. Assistance of Counsel[7]

Petitioner initially contends he was denied effective assistance of counsel at trial because

---

[7]Petitioner's claim in part c, that counsel was ineffective in advising petitioner about the possibility of probation assessed by a jury, is cumulative of his fourth ground and was fully addressed by this court in part four.

counsel did not discover, challenge or properly advise petitioner of the deficiencies of the indictment.  Petitioner also contends he was denied effective assistance of counsel because counsel testified against petitioner at a hearing on his motion for new trial, violating trial counsel's fiduciary duty to petitioner.

Petitioner has failed to show any deficient performance by defense counsel on either of these claims, nor has he shown prejudice.  Reasonable probability of a different result is sufficient enough to satisfy the prejudice prong of *Strickland v. Washington,* 466 U.S. 668, 695, 104 S. Ct. 2052, 2068-69, 80 L. Ed. 2d 674 (1984).  The undersigned notes, however, that in order "[t]o prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Bond v. Dretke,* 384 F.3d 166, 167-68 (5th Cir. 2004) (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 371, 88 L. Ed. 2d 203 (1985)) (internal quotation marks omitted).  Petitioner does not have to prove with absolute certainty that he would not have pleaded guilty, only that there was a "reasonable probability" such would have occurred.

These ineffective assistance of counsel claims were adjudicated on the merits in the state habeas corpus proceeding.  When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to a presumption of correctness.  *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence practice).  Denial of relief based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.

*Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003).  Section

2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed

to be correct.  The petitioner has the burden of rebutting this presumption of correctness by clear and

convincing evidence.  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

A.

Even without AEDPA deference, these claims are without merit.  Petitioner alleges trial

counsel failed to conduct a proper pretrial investigation to discover the deficiencies in the

indictments.  As discussed under ground one, however, the indictments were not in any way

defective.  Consequently, it cannot be said counsel was ineffective for failing to discover non-

existent deficiencies.  Further, there is no evidence petitioner was unaware of the deficiencies he

claims exist when he entered his plea of guilty.  A valid guilty plea waives all non-jurisdictional

defects, including an ineffective assistance of counsel claim, unless the ineffective assistance claim

affects the voluntariness of the plea.  *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).  Here, there

is no evidence of the petitioner's guilty plea being so affected.

B.

In his second point, petitioner contends his trial counsel breached her fiduciary duty by

testifying against petitioner at his motion for new trial.  It is well settled that an attorney does not

breach fiduciary duties owed to a client by appearing as a witness in a post-conviction proceeding

called to determine the adequacy of the attorney-witness's effectiveness.  *Laughner v. United States*,

373 F.2d 326, 327 (5th Cir. 1967).  When a client alleges a breach of duty, the attorney-client

privilege is waived because the communications between the attorney and the client are "the one

source of evidence likely to contradict [the client's] allegations."  *Id.*  Here, petitioner may not claim

he was ineffectively assisted by counsel on the one hand, while on the other hand invoking the attorney-client relationship to silence the only other source of evidence to rebut his claim.  *Id.*

Even if petitioner's claim is construed as raising an issue of conflict of interest between trial counsel and himself the claim still fails.

"The Sixth Amendment right to counsel includes the 'right to representation that is free from any conflict of interest.' "  *United States v. Garcia–Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993)).  "As a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) (citing *Garcia–Jasso*, 472 F.3d at 243). The conflict, however, must be an actual conflict of interest, as opposed to " 'a speculative or potential' conflict."  *Burns*, 526 F.3d at 856 (quoting *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005)).  Here, petitioner has not alleged that any situation "tempt[ed] a division in counsel's loyalties."  The potential conflict petitioner alleges did not arise until after trial counsel's representation of petitioner had concluded.  Indeed, at the time of the hearing on the motion for new trial petitioner was represented by new counsel.  As evidenced by *Laughner*, attorneys are frequently called to testify against their former clients when allegations of ineffective assistance of counsel are raised.  Such a situation does not raise a conflict of interest where trial counsel has completed his representation of a client.  *See Laughner*, 373 F.2d at 327.  Petitioner's fifth ground should be denied.

### 6.  Prosecutorial Misconduct

By his sixth ground, Petitioner claims the State committed prosecutorial misconduct by indicting and convicting petitioner using unlawful indictments and by committing perjury at

petitioner's motion for new trial hearing.

As to the allegation of prosecutorial misconduct by using unlawful indictments, as discussed previously in section A, the indictments were not unlawful.  Because the indictments were proper, the prosecution did not commit any misconduct.

In the second instance, petitioner claims a prosecutor perjured herself by denying the existence of a pretrial plea offer.  In support of this contention, petitioner cites the following statement the prosecutor made during the hearing on the motion for new trial: "We talked a lot about the offer that was on the table but we've never actually said what it was."  3 RR 64.  Petitioner appears to have misunderstood the statement.  The question was asked by the prosecutor during the direct examination of petitioner's trial counsel in order to set out, for the record, the terms of the proposed plea agreement.  The prosecutor was not denying that a plea bargain had been offered or that the terms of the agreement had been presented to the petitioner.  Instead, the prosecutor was merely eliciting the terms of the agreement from defense counsel for the record.  Indeed, in response to the prosecutor's question, petitioner's trial counsel stated the terms of the proposed plea agreement.  *Id*. at 64-65.  Rather than denying the existence of a plea agreement, the prosecutor affirmed its existence and entered its specific terms into the record.  The state did not commit perjury and, therefore, did not commit prosecutorial misconduct.  The petitioner's sixth ground should be denied.

### 7.  Involuntary Confession

By his seventh ground, Petitioner claims his confession was involuntary because it was coerced, obtained in violation of *Miranda*, and was the result of an unlawful search and seizure.  The state argues in its brief that a plea of guilty waives any *Miranda* violation as it relates to petitioner's

allegedly coerced confession.  It is true that a guilty plea waives *claims arising out of* a coerced

confession.  *See Brown v. Butler*, 811 F.2d 338, 940 (5th Cir. 1987) (holding guilty plea waived

claim that pre-sentence report was inadmissible because it contained coerced confession).  A federal

court must uphold a guilty plea challenged in a habeas corpus proceeding if the plea was voluntary,

knowing, and intelligent.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  Consequently, a

challenge is limited to issues of (1) voluntariness, (2) the defendant's understanding of the charges

against him, and (3) the defendant's understanding of the consequences of the plea.  *See Hill v.*

*Lockhart*, 474 U.S. 52, 56-57 (1985).  In *McMann v. Richardson* the Supreme Court held "that a

defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without

more, entitled to a hearing on his petition for habeas corpus."  397 U.S. 759, 771 (1970).  Such a

plea is not subject to collateral attack in a federal court on the ground that it was motivated by a

coerced confession unless the defendant was incompetently advised by his attorney that the

confession would be admissible and the defendant relied on counsel's legal opinion as to the

admissibility of the confession in deciding to enter a guilty plea.  *Id.*  A defendant's guilty plea based

on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel

may have misjudged the admissibility of the defendant's confession.  *Id.* at 770.   Advice is

"reasonably competent if that advice was within the range of competence demanded of attorneys in

criminal cases.  *Id.*

Here, petitioner has not claimed his attorney advised him on the admissibility of his

confession.  Indeed, he has not claimed that his guilty plea was influenced by his prior confession at

all.  Assuming, arguendo, that the confession was in fact coerced, petitioner would still not be

entitled to relief; the mere existence of a coerced confession, without more, does not entitle a

petitioner to challenge his conviction by plea of guilty in a habeas action. *See id.* at 771.  Without a showing that the plea was entered involuntarily, federal habeas relief is not available.  Petitioner's seventh and final ground should be denied.

V.
RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge that the Petition for a Writ of Habeas Corpus filed by petitioner JOSEPH WENDELL HUME be DENIED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____28th_____ day of _____February_____ 2014.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).